IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTEN OLDENBURG,

                Plaintiff,

v.                                                  OPINION and ORDER

FRANK BISIGNANO,                               24-cv-475-jdp
Commissioner of the Social Security Administration,

                Defendant.[1]

---

Plaintiff Kristen Oldenburg seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Oldenburg was not disabled within the meaning of the Social Security Act. Oldenburg contends that administrative law judge (ALJ) Guila Parker failed to adequately explain why she did not place any work restrictions on Oldenburg related to her ability to interact with others. The ALJ's decision is supported by substantial evidence, and Oldenburg has not identified any legal errors in the decision, so the court will affirm the decision.

BACKGROUND

Oldenburg applied for disability benefits, alleging disability beginning in July 2021. R. 17.[2] The ALJ found that Oldenburg suffered from both physical and mental impairments. *Id.* The physical impairments are not relevant to the appeal, so it is not necessary to consider those. The mental impairments are bipolar disorder with anxiety, somatic symptom disorder,

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 5.

bulimia, and post-traumatic stress disorder. *Id.* The ALJ found that Oldenburg had the residual functional capacity (RFC) to perform light work, with some additional physical restrictions that are not relevant to this appeal. R. 20. As for mental abilities, the ALJ found that Oldenburg could carry out simple tasks for two-hour intervals, make simple work-related decisions, and tolerate occasional changes in work setting. Relying on the testimony of a vocational expert, the ALJ found that Oldenburg could not perform any of her past relevant work, but she was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as telephone solicitor, interviewing clerk, and call out operator. R. 27.

Oldenburg now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Oldenburg raises two issues on appeal, both of which are related to the ALJ's decision not to include any restrictions in the RFC assessment for the ability to interact with others. Oldenburg's primary contention is that the ALJ failed to adequately explain why she did not adopt the opinions of two state-agency psychologists who found that Oldenburg suffered from moderate limitations in interacting with others. Alternatively, Oldenburg says that the ALJ

should have explained why she was not including restrictions for a mild limitation in interacting with others.

The ALJ explained in a lengthy paragraph why she declined to credit the state-agency psychologists' opinion on plaintiff's ability to interact with others:

> The claimant received mental health treatment including therapy and medication management during the relevant period. However, treatment notes show that she generally functions quite well. Her lower periods strongly corresponded to life stressors that included having to deal with her aging mother and relationship conflicts. Exams over time show the claimant to demonstrate a normal appearance, no distress, a normal mood, normal behavior, and normal thought content, though at times she appears sad and is angry or frustrated if her doctors do not comply with her requests. She is noted to engage easily in conversation, establish rapport, have consistent eye contact, maintain intact functional status, and demonstrate relaxed posture, good attention and concentration, intact memory, and good insight. She is repeatedly described as pleasant and cooperative. The claimant actively engages with her church, is a member of a music group, goes mini-golfing, bakes and cooks for friends, and makes travel plans with a friend. The record supports some moderate difficulties in maintaining concentration and adaptation, but not in interacting with others in a setting such as a routine workplace.

R. 25–26 (citations omitted). This explanation can be distilled to three reasons: (1) Oldenburg generally did not display difficulties interacting with others during exams or otherwise; (2) when she did have difficulties, this was during times of unusual stress that would not expected to be replicated in a "routine workplace"; and (3) many of her activities of daily living involve socializing, suggesting that she does not have difficulty interacting with others.

Oldenburg does not directly challenge any of the ALJ's reasons. Instead, she says that the ALJ erred for two other reasons: (1) the ALJ failed to give sufficient weight to instances in which Oldenburg had difficulties interacting with others; and (2) the ALJ substituted her judgment for the opinions of the psychological experts.

Neither of Oldenburg's reasons are persuasive. As for the ALJ's failure to give more weight to instances in which Oldenburg had difficulty interacting with others, it is true that ALJs must consider the fact that a condition like bipolar disorder can wax and wane, "so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011). But in this case, the ALJ did what she was supposed to by reviewing Oldenburg's condition over the long term rather than just focusing on a few records.

Oldenburg points to a few instances over a three-year period in which she demonstrated interpersonal conflicts: once in September 2021 when therapy records stated that Oldenburg exhibited "combative behaviors" (without explaining what that meant), R. 472–73; twice in June 2022 and once in March 2023 when she became angry with her doctor for not prescribing the medications she wanted, R. 1785, 1949, 2213–15; and once in June 2022 when she tried to show her therapist a nude photo of her romantic partner, R. 1785.[3] These incidents could support a finding that Oldenburg was moderately limited in interacting with others. But the question is not whether reasonable minds could disagree with the ALJ; it is whether no reasonable view of the evidence supports the ALJ's decision. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023).

Oldenburg has not met that standard. The ALJ acknowledged that Oldenburg experienced "lower periods" and sometimes expressed anger when she did not get what she wanted. But the ALJ weighed the evidence and concluded that, on the whole, the evidence

---

[3] Oldenburg includes a much lengthier summary of the medical evidence in her brief, Dkt. 6, at 2–15, but she does not explain how any of the other evidence shows that she is limited in her ability to interact with others, as opposed to another mental ability that is not relevant to her appeal.

showed that Oldenburg did not have difficulty interacting with others. The ALJ cited numerous pieces of evidence to support her conclusion, and Oldenburg points to no evidence that the ALJ disregarded. Accepting Oldenburg's argument would require the court to reweigh the evidence, which the court may not do. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

As for Oldenburg's contention that the ALJ substituted her judgment for the opinions of the psychological experts, it is well established that ALJs are not required to adopt any of the medical opinions in the case, so long as the ALJ's decision is otherwise supported by substantial evidence. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The ALJ must also consider whether each medical opinion is well supported and consistent with other evidence. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The ALJ did that, concluding that the weight of the evidence was inconsistent with the consultants' opinions.

Oldenburg relies on *Rohan v. Chater*, in which the court stated that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." 98 F.3d 966, 970 (7th Cir. 1996). But the ALJ did not offer lay interpretations of complex medical records or make her own diagnosis of Oldenburg's condition. *See Gibbons v. Saul*, 801 F. App'x 411, 417 (7th Cir. 2020); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). Rather, the ALJ relied on Oldenburg's own conduct and the observations of Oldenburg's healthcare providers. That is not playing doctor, it is weighing the evidence, which is what the ALJ is supposed to do. *See Baptist v. Kijakazi,* 74 F.4th 437, 442–43 (7th Cir. 2023); *Prill v. Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022).

In the alternative, Oldenburg contends that the ALJ erred by finding that Oldenburg suffers from mild limitations in interacting with others but failing to include any restrictions in the RFC assessment for that limitation. This contention also fails. Oldenburg is conflating a

5

mild limitation on a category of mental functioning with a mild limitation on the ability to work. *See Fuller v. Colvin*, No. 23-cv-585-jdp, 2025 WL 211966, at *3 (W.D. Wis. Jan. 16, 2025). Even a "moderate" limitation may not require any restrictions in the RFC assessment. *See Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020); *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015). As already discussed, the ALJ explained why she believed that Oldenburg did not require restrictions related to her ability to interact with others, and that decision is supported by substantial evidence.

## ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered July 22, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

6